IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-CR-00100-JO |
| ) | |
| ) | OPINION AND ORDER |
| ESMERALDA ROMERO-LOPEZ ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

Jones, J.

Defendant Esmeralda Romero-Lopez (Romero-Lopez) is charged with one count of illegally reentering the United States after having been removed, in violation of 8 U.S.C. § 1326. The indictment alleges that Romero-Lopez unlawfully reentered the United States without the consent of the appropriate authorities after having been removed as a noncitizen in 2004. Romero-Lopez now moves to dismiss, collaterally attacking the 2004 removal order. [ECF No. 16] She contends that she was denied due process because the Notice to Appear (NTA) she received for her 2004 removal hearing omitted a specific date and time for the hearing, thus depriving the Immigration Court (IC) of jurisdiction to hold a removal hearing. In the alternative, she asserts that her due process rights were violated because the original convictions that formed the

1 Opinion and Order

bases for her deportation should not have been treated as aggravated felonies. Furthermore, she contends that she was not properly advised of her eligibility for relief from deportation. For the following reasons, I DENY the motion.

## Factual Background

Romero-Lopez was admitted into the United States as a lawful permanent resident in 1993. On December 5, 2000, she was convicted of Receiving Stolen Property, in violation of Cal. Penal Code § 496(a) (Case No. 24909) [Def. Ex. 2 at 9, ECF No. 26]] She received a sentence of four months in prison and a thirty-six-month term of probation.[1] [Def. Reply at 6; ECF No. 26 and Def. Ex. 2 at 9, ECF No.26.] The order imposing probation stated that she was convicted of the crime of "Receiving Stolen Property, a *felony*." [Def. Ex. 2 at 9, ECF No. 26] (emphasis supplied). On December 30, 2002, she was convicted of False Personation, in violation of Cal. Penal Code § 529 [Def. Ex. 2 at 2, ECF No. 26], and sentenced to six months in jail and a term of probation. (Case No. 27525) [Def. Reply at 6.] On April 24, 2003, while still on probation, Romero-Lopez was convicted a second time for False Personation. (Case No. MF-35533) [Def. Reply at 2.] The Merced County Court sentenced Romero-Lopez to a prison term of sixteen months on the second False Personation conviction. In addition, the court revoked and then reinstated probation for her prior two convictions and sentenced her to an additional sixty days in Merced County Jail on the Receiving Stolen Property conviction, but no additional jail time for the first False Personation conviction. [Def. Reply at 7.] An Abstract of Judgment issued five days post-conviction

---

[1] The arrest report lists the crime as a felony. [Def. Ex. 6 at 1, ECF No. 20.] Romero-Lopez estimates the value of the item she received at $80. [Def. Ans. at 3, ECF No. 28.]

by the Merced District Court states that "Defendant was convicted of the commission of the following *felonies*" (emphasis supplied) and lists all three of Romero-Lopez's convictions. [Def. Ex. 2 at 4, ECF No.26.] The Abstract lists the sentences imposed as sixteen months for each conviction.

While Romero-Lopez was in custody, the California Department of Corrections sent a notice to U.S. Immigration that Romer-Lopez might be wanted by them for Illegal Entry. [Govt. Ex. 1 at 1, ECF No. 25.] On June 2, 2003, the Immigration and Naturalization Service (INS) issued Form I-862, an NTA for removal proceedings for Romero-Lopez. [Govt. Ex. 1 at 7.] The form ordered Romero-Lopez to appear for a hearing to show why she should not be removed from the United States. However, the NTA did not specify the place, date, and time for that hearing. Rather, in the blanks for date and time, the form noted "a date to be set" and "a time to be set." [Govt. Ex. 1 at 7.]

On June 12, 2003, the INS generated Form I-213, a Record of Deportable/Inadmissible Alien. The form stated that on April 24, 2003, Romero-Lopez had been convicted of an Aggravated Felony, to wit: False Personation & Receiving Stolen Property. The form also referenced her sixteen-month sentence. [Govt. Ex. 1 at 3.] Romero-Lopez remained in state custody until December 22, 2003, when she was transferred to INS custody.

On December 22, 2003, Romero-Lopez signed and dated a "Notification of Rights and Request for Resolution." [Govt. Ex. 1 at 11.] That document, provided to Romero-Lopez in Spanish, informed her that: (1) she had a right to a hearing to decide if she could remain in the United States; (2) she might have the right to be released on bail before her hearing; (3) she had the option to return to her country of origin without a

hearing; (4) she had the right to contact an attorney or legal representative; (5) she could be provided a list of no- or low-cost attorneys if she requested; and (6) she could use a phone to contact her country's consular office or legal representative. Romero-Lopez checked and initialized a box on the form indicating she requested a hearing to determine if she could remain in the United States. She did not check a box on the form that she considered it dangerous if she were to be returned to her country of origin.

On January 6, 2004, INS conducted an internal file review of Romero-Lopez. The review determined that she was an aggravated felon for which detention was mandatory. [Govt. Ex. 1 at 18.] On January 12, 2004, Romero-Lopez appeared before an Immigration Judge (IJ) at her removal proceeding. She was not represented by an attorney. Following the hearing, she was ordered removed from the United States to Mexico because she had been convicted of a crime designated as an aggravated felony. [Govt. Ex. 1 at 21.] At the hearing, Romero-Lopez waived her right to appeal and was removed from the United States. [Govt. Ex. 1 at 22.]

Thereafter, Romero-Lopez reentered the United States. On January 18, 2018 she was found in the District of Oregon and this case followed. [ECF No 1.]

## LEGAL STANDARD

"A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has the right to bring a collateral attack challenging the validity of h[er] underlying removal order, because that order serves as a predicate element of h[er] conviction." *United States v. Ochoa*, 861 F.3d 1010, 1014 (9th Cir. 2017).

To sustain a collateral challenge under section 1326(d), a defendant must demonstrate that (1) she has exhausted all administrative remedies available to appeal the deportation order; (2) the underlying deportation proceedings at which the order was issued improperly deprived her of judicial review; and (3) the deportation order was fundamentally unfair. 8 U.S.C. § 1326 (d); *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1048 (9th Cir. 2004). The defendant bears the burden of proving all the § 1326(d) elements. *Ochoa,* 861 F.3d at 1019. If a defendant was not convicted of an offense that made her removable under the INA to begin with, she is excused from proving the first two requirements. *Ochoa,* 861 F.3d at 1015; *United States v. Camacho-Lopez,* 450 F.3d 928, 930 (9th Cir. 2006). With respect to the third prong, "[a]n underlying removal order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in her underlying [removal] proceeding, and (2) she suffered prejudice as a result of the defects." *Ubaldo-Figueroa,* 364 F.3d at 1048 (internal quotation marks and alterations omitted).

The INA "provides that a noncitizen who has been convicted of an 'aggravated felon'" may be deported from this country." *Moncrieffe v. Holder,* 569 U.S. 184, 187 (2013). "The term 'aggravated felony' means—a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G) (2004).

An IJ has jurisdiction over removal proceedings even though an NTA lacks a date and time for the removal proceeding. *Karingithi v. Whitaker,* 913 F.3d 1158 (9th Cir. 2019). An NTA vests an IJ with jurisdiction regardless of whether there is a later-issued notice informing the noncitizen of the time and date of the hearing. *See*

*generally Karingithi*, 913 F.3d 1158; *In ren Bermudez-Cota,* 27 I. & N. Dec. 441, 447 (BIA 2018); *United States v. Arteaga-Centeno,* 365 F.Supp. 3d 1023, 1028 (N.D. Cal. 2019).

## DISCUSSION

I.  Notice to Appear

Romero-Lopez, relying on *United States v. Pereira*, 138 S. Ct. 2015 (2018), contends that an NTA that does not provide the date, time, and place, does not serve as a valid charging document vesting the IJ with jurisdiction to commence removal proceeding. In *Pereira*, the Supreme Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule" set forth in § 1229b(d)(1)(A). *Pereira,* 138 S. Ct. at 2110-11.

However, the petitioner in *Pereira* was challenging an issue distinct from the jurisdictional question in this case. In *Pereira*, the Court decided only a single, "narrow question": whether a document labeled "notice to appear" in the context of *cancellation of removal* under 8 U.S.C. §§1229(a), 1229b, that fails to specify either the time or place of the removal proceedings triggers the stop-time rule. *Pereira,* 138 S. Ct. at 2110. As the Ninth Circuit noted in *Karingithi*, "*Pereira* was not in any way concerned with the Immigration Court's jurisdiction . . . . Unlike the stop-time rule, the Immigration Court's jurisdiction does not hinge on §1229(a), so *Pereira's* narrow ruling does not control our analysis." *Karingithi,* 913 F.3d at 1159.

In *Karingithi*, the defendant, a native of Kenya, entered the United States on a tourist visa and remained past its six-month limit. She received an NTA which specified the location of the removal hearing, but the date and time were "To Be Set." *Karingithi*, 913 F.3d at 1159. The Ninth Circuit held that it is the INA's regulation, and not the INA statute itself, that governs the requirements for an NTA, in so far as jurisdiction is concerned. 8 C.F.R §1003.14(a) provides: "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." A charging document includes an NTA. 8 C.F. R. § 1003.13. An NTA, as defined by the regulations, "does not require that the time and date of proceedings appear in the initial notice." *Karingithi*, 913 F.3d at 1160. The regulation requires that place, date, and time information be included only "*where practicable.*" 8 C.F.R. 1003.18(b) (Emphasis added.) Thus, the Ninth Circuit concluded that, pursuant to regulations, an NTA need not include specific time and date information to vest jurisdiction with the IJ. *Karingithi*, 913 F3d at 1160.

Here, the NTA provided to Romero-Lopez and filed with the IC conferred jurisdiction with the IJ, even though it lacked the time, place, and date for her removal hearing. The IJ had the authority to order her removal. Romero-Lopez was never out of custody and attended her removal hearing. She suffered no violation of due process based upon the absence of information on her NTA as to the time, place, or date of her removal hearing.

    II.    Due Process

To collaterally challenge a prior deportation order, Romero-Lopez must prove that she exhausted her administrative remedies, was deprived of judicial review, and the

removal order was fundamentally unfair. Romero-Lopez contends that she was not convicted of an offense that made her removable under the INA, and thus she is excused from proving the first two requirements. Specifically, she alleges that her original convictions should not have been treated as aggravated felonies.

The INS identified Romero-Lopez's convictions for receipt of stolen property and her two convictions for "crimes involving moral turpitude not arising out of a single scheme of criminal misconduct" as the bases for her removal. [Govt. Ex. 1 at 8.] Although Receipt of Stolen Property is a basis for removal as an aggravated felony, the crime of false personation is not. *Paulo v. Holder*, 669 F.3d 911, 913 (9th Cir. 2011) (false personation is not a crime involving moral turpitude.)

Turning to her conviction for Receipt of Stolen Property, Romero-Lopez contends that the maximum sentence she received for Receipt of Stolen Property did not exceed one year and could not be considered an aggravated felony for purposes of removal. "A felony is a crime for which the 'maximum term of imprisonment authorized is 'more than one year.'" *United States v. Valencia-Mendoza*, 912 F.3d 1215, 1219 (9th Cir. 2019) (quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 567 (2010)). However, when the probation violations for her first two convictions were combined with her new conviction for violating §529 (False Personation), Romero-Lopez received a sixteen-month sentence for Receipt of Stolen Property.

She argues that the sixteen-month sentence may have been justified for the new §529 offense but was not justified or lawful for the Receipt of Stolen Property offense. She contends that the California statute in effect at the time of her removal hearing

removal order was fundamentally unfair. Romero-Lopez contends that she was not convicted of an offense that made her removable under the INA, and thus she is excused from proving the first two requirements. Specifically, she alleges that her original convictions should not have been treated as aggravated felonies.

The INS identified Romero-Lopez's convictions for receipt of stolen property and her two convictions for "crimes involving moral turpitude not arising out of a single scheme of criminal misconduct" as the bases for her removal. [Govt. Ex. 1 at 8.] Although Receipt of Stolen Property is a basis for removal as an aggravated felony, the crime of false personation is not. *Paulo v. Holder*, 669 F.3d 911, 913 (9th Cir. 2011) (false personation is not a crime involving moral turpitude.)

Turning to her conviction for Receipt of Stolen Property, Romero-Lopez contends that the maximum sentence she received for Receipt of Stolen Property did not exceed one year and could not be considered an aggravated felony for purposes of removal. "A felony is a crime for which the 'maximum term of imprisonment authorized is 'more than one year.'" *United States v. Valencia-Mendoza*, 912 F.3d 1215, 1219 (9th Cir. 2019) (quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 567 (2010)). However, when the probation violations for her first two convictions were combined with her new conviction for violating §529 (False Personation), Romero-Lopez received a sixteen-month sentence for Receipt of Stolen Property.

She argues that the sixteen-month sentence may have been justified for the new §529 offense but was not justified or lawful for the Receipt of Stolen Property offense. She contends that the California statute in effect at the time of her removal hearing

limited punishment, if the value of the property did not exceed four hundred dollars, to "not more than one year." West's Ann. Cal Penal Code §496.

Romero-Lopez misreads the statute. The statute provides:

> Every person who . . . receives any property that has been stolen . . . shall be punished by imprisonment in a state prison, or in county jail for not more than one year. However, if the district attorney or the grand jury determines that this action would be in the interests of justice, the district attorney or the grand jury, as the case may be, may, if the value of the property does not exceed four hundred dollars ($400), specify in the accusatory pleading that the offense shall be a misdemeanor, punishable only by imprisonment in the county jail not exceeding one year.

West's Ann.Cal.Penal Code §496(a).

The statute allows courts to impose a sentence in excess of a year in state prison, but if the sentence imposed is to be served in county jail, the sentence may not exceed one year. Romero-Lopez could have been sentenced to a term of more than one year in state prison and therefore the crime of Receipt of Stolen Property could be classified as a felony. Furthermore, there is no indication that the district attorney or grand jury specified that her offense would be treated as a misdemeanor. Nothing in the record shows that the trial court exercised its discretion and converted her conviction to a misdemeanor. Had the district attorney or grand jury specified that her offense would be treated as a misdemeanor, presumably the sentencing order would not have deemed her crime a felony. I conclude that Romero-Lopez was convicted of a felony for Receipt of Stolen Property for which, ultimately, she was sentenced to sixteen months. Thus, Romero-Lopez is not excused from the first two requirements of 8 U.S.C. § 1326(d).

The government contends that because Romero-Lopez waived her right to appeal, she did not exhaust her administrative rights and thus cannot meet the first requirement of 8 U.S.C. § 1326(d). Romero-Lopez counters that although she signed a waiver of appeal at the hearing, her waiver was neither considered nor intelligent.

A valid waiver of the right to appeal "must be both 'considered and intelligent.'" *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *United States v. Estrada-Torres,* 179 F.3d 776, 780–81 (9th Cir. 1999)). The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings. *United States v. Lopez-Vasquez,* 1 F.3d 751, 753 (9th Cir. 1993). Courts "indulge every reasonable presumption against waiver," and do "not presume acquiescence in the loss of fundamental rights." *Lopez-Vasquez,* 1 F.3d at 753 (internal quotation marks omitted). Moreover, "the due process inquiry focuses on whether [the defendant] *personally* made a 'considered and intelligent' waiver of his appeal." *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1049 n.8 (9th Cir.2004) (emphasis in original).

We do not have any record of Romero-Lopez's removal proceeding. That record was either lost or could not be located by the U.S. Departmentt. of Justice. [Def. Ex. 3 at 1, ECF No. 26.] Romero-Lopez's affidavit states that she was brought before the IJ with 30 other Spanish-speaking people. An interpreter assisted the IJ. But it was the interpreter, and not the IJ, who informed her of her appellate rights and told her that if she signed the forms to leave voluntarily, she could file an appeal from Mexico. She also states that she was not advised of any eligibility for relief from deportation. [Def. Ex. 4 at 4, ECF No. 26.]

The government provided no evidence that Romero-Lopez's waiver was considered and intelligent. The only evidence in the record is Romero-Lopez's affidavit which states that the person who informed her of her rights was not the IJ, but an interpreter. The interpreter was not translating what the IJ said but was using her own words. [Def. Ex. 4 at 2, ECF No. 26.] I cannot conclude that Romero-Lopez's waiver was "considered and intelligent" because the information provided came from the interpreter, not the IJ. The government has not established by clear and convincing evidence that she received adequate advisement as to her appellate rights.

However, Romero-Lopez must also prove that she suffered prejudice as a result of the denial of due process. *Ubaldo-Figueroa,* 364 F.3d at 1048. To do this, she must show that she had "plausible grounds for relief" from the removal order. *United States v. Raya-Vaca,* 771 F.1195, 1206 (9th Cir. 2014). Thus, even if her waiver of appeal was not "considered and intelligent" as required in *United States v. Ramos,* 623 F.3d 672, 681 (9th Cir. 2010), and even if the IJ failed to inform her of her eligibility for relief from deportation as required in *United States v. Mendoza-Lopez,* 481 U.S. 828, 840 (1987), she cannot prove she suffered prejudice. "The INA . . . prohibits the Attorney General from granting discretionary relief from removal to an aggravated felon, no matter how compelling his case." *Moncrieffe,* 569 U.S. at 187 (2013). As an aggravated felon, she was not eligible for discretionary relief and would have been deported.

## CONCLUSION

The IC had jurisdiction to hear the case even though the NTA omitted the date and time for Romero-Lopez's removal hearing. As a noncitizen who committed an

11 Opinion and Order

aggravated felony, Romero-Lopez was not eligible for discretionary relief. She could not show that she suffered prejudice as a result of any due process violations that occurred during her removal hearing. Romero-Lopez's Motion to Dismiss [ECF No. 16] is DENIED.

IT IS SO ORDERED.

Dated this 16th of December, 2019.

Robert E. Jones, District Court Judge